UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARCELIA ORTIZ PUENTE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-1103-B |
| | § | |
| TRACY RENAUD, *Acting Director of the United States Citizenship and Immigration Service,* and WILHELM F. BIERMAN, *Dallas Field Office Director of the United States Citizenship and Immigration Service,* | § § § § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Tracy Renaud and Wilhelm F. Bierman (collectively "USCIS")'s Motion to Dismiss (Doc. 7). For the reasons that follow, the Court **GRANTS** USCIS's motion pursuant to Federal Rule of Civil Procedure 12(b)(1) and **DISMISSES WITHOUT PREJDUICE** Puente's Complaint (Doc. 1).

### I.

### BACKGROUND

This is an immigration case. In 1988, Plaintiff Arcelia Ortiz Puente ("Puente"), "a native and citizen of Mexico[,] entered the United States with a green card (I-551 card) provided to her by her father." Doc. 1, Compl., ¶ 2. Puente claims that, upon arriving at the border, she "presented the green card to an immigration official who asked only when she was born and permitted her to enter the U.S." *Id.* ¶ 3. Puente has lived in the United States ever since. *Id.*

In 2017, Puente's child filed an I-130 visa petition[1] on Puente's behalf which was approved by USCIS. *Id.* ¶ 4. In 2019, seeking to adjust her status to that of a permanent resident, Puente filed an I-485 Application to Register Permanent Residence or Adjust Status (the "adjustment application") pursuant to § 245(a) of the Immigration and Nationality Act ("INA"). *Id.* ¶ 5. The INA provides the Attorney General discretion to adjust the status of an I-485 applicant if the applicant "was inspected and admitted or paroled into the United States" and other conditions for adjustment are met.[2] 8 U.S.C. § 1255(a).

In support of her application, Puente provided a "sworn statement regarding the circumstances surrounding her admission to the United States in 1988," as well as statements written by four of her siblings, which stated that "their father contemporaneously told them (in 1988) that he arranged for [Puente's] admission by procuring the green card of another person." *Id.* ¶¶ 6, 17. "[D]ue to her misrepresentation upon entry," Puente also sought a waiver of her inadmissibility.[3] *Id.* ¶ 5.

---

[1] Though approval of an I-130 visa petition does not grant "any immigration status or benefit," filling the petition "is the first step in helping an eligible relative apply to immigrate to the United States and get [a] Green Card." *I-130, Petition for Alien Relative*, U.S. Citizenship & Immigr. Servs. (Nov. 2, 2021), https://www.uscis.gov/i-130.

[2] Specifically, in addition to filing an application, the applicant must be eligible "to receive an immigrant visa and . . . admissible to the United States for permanent residence," and have an immigrant visa "immediately available to [her] at the time [her] application is filed." 8 U.S.C. § 1255(a).

[3] Under the INA, "[a]ny alien who, by fraud or willfully misrepresenting a material fact . . . has procured . . . admission into the United States . . . is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i). However, the Attorney General has discretion to waive an alien's inadmissibility if they are the "spouse, son, or daughter of a United States citizen or [lawful resident] . . . [and] refusal of admission to the United States . . . would result in extreme hardship to the citizen or lawfully resident spouse or parent of [the] alien." *Id.* §§ 1182(i)(1), 1182(a)(6)(C)(iii).

In or about January 2021, USCIS denied Puente's application on the ground that she was ineligible for adjustment of status because "she was not inspected and admitted upon entry to the United States." *Id.* ¶ 7. To date, no removal proceedings have been initiated against Puente. *See id.*

On May 16, 2021, Puente filed this lawsuit bringing a single claim under the Administrative Procedure Act ("APA"). *See id.* Specifically, she seeks a court order: (1) declaring that the denial of her application was arbitrary and capricious; (2) compelling USCIS to re-adjudicate her application; and (3) awarding her reasonable costs and attorneys' fees. *Id.* at 15. In response, USCIS filed the instant motion to dismiss, arguing that the Court lacks subject-matter jurisdiction to hear Puente's claim, or, in the alternative, Puente has failed to state a claim.[4] Doc. 7, Defs.' Mot., 6, 14. The motion is fully briefed and ripe for review.

## II.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). For that reason, they can adjudicate claims only when subject matter jurisdiction is expressly conferred by the Constitution or federal statute. *Id.* District courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A court must dismiss a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Federal Rule of Civil Procedure 12(b)(1) is the procedural

---

[4] Because the Court finds that it lacks subject-matter jurisdiction to hear Puente's claim, it does not address USCIS's argument that Puente has failed to state a claim.

vehicle for challenging a court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Where, as here, a motion attacks subject matter jurisdiction based solely on the face of the complaint, courts consider only "the allegations in the complaint because they are presumed to be true." *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (citation omitted).

## III.

## ANALYSIS

USCIS argues that the Court lacks subject-matter jurisdiction because (1) USCIS's denial of Puente's adjustment application is not a final agency action under the APA, and therefore Puente has not exhausted her administrative remedies; (2) Congress has precluded judicial review of USCIS's discretionary decisions to deny Puente's application; and (3) Puente has not identified another statute supplying the Court with subject-matter jurisdiction over her claim. *See* Doc. 7, Defs.' Mot., 6–13.

Below, the Court addresses each argument in turn and concludes that (1) Puente has not exhausted her administrative remedies; (2) even if Puente had exhausted her remedies, 8 U.S.C. § 1252(a)(2)(B)(i) strips the Court of jurisdiction to hear Puente's claim; and (3) Puente's other statutory arguments for jurisdiction fail.

A.  *Puente Has Not Exhausted Her Administrative Remedies*

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, except where provided for by statute, judicial review is limited to "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704.

Accordingly, the issue presented is whether USCIS's denial of Puente's application is a "final agency action" supplying the Court with subject-matter jurisdiction.

Generally, an I-485 applicant cannot appeal USCIS's denial of their adjustment-of-status application; however, the applicant does "retain[] the right to renew his or her application" in removal proceedings. *See* 8 C.F.R. § 245.2(a)(5)(ii). USCIS argues that, because "Puente still has recourse to challenge USCIS's denial if and when removal proceedings are commenced, USCIS's decision is not a final agency action and Puente has not exhausted her administrative remedies." Doc. 7, Defs.' Mot., at 10. In support of its position, USCIS cites to a string of authority deriving from the Fifth Circuit's opinion in *Cardoso v. Reno*, 216 F.3d 512 (5th Cir. 2000). *Id.* at 9. Puente responds that *Cardoso* is no longer controlling precedent in light of the Fifth Circuit's recent opinion in *Nolasco v. Crockett*, 978 F.3d 955 (5th Cir. 2020). Doc. 12, Pl.'s Resp., 3–6. Below, the Court reviews the relevant authorities and concludes that it remains bound by *Cardoso*.

1.  Fifth Circuit Precedent

    i.  *Cardoso v. Reno*

In *Cardoso*, a plaintiff's[5] adjustment application was denied on eligibility grounds, though no removal proceedings were initiated. 216 F.3d at 517. When she filed suit challenging the denial, the district court dismissed her case for lack of subject-matter jurisdiction. *Id.* at 514. The Fifth Circuit affirmed on appeal, holding that, "although [Plaintiff] may not directly appeal the immigration judge's denial of her request for adjustment of status, she may, nevertheless, renew her request upon the commencement of removal proceedings." *Id.* at 518. "As such," the court concluded, "[she] has

---

[5] *Cardoso* involved three plaintiffs. 216 F.3d at 513. Only the third plaintiff, Aurora Moran, is relevant to the Court's analysis.

not yet exhausted her administrative remedies and this Court may not exercise jurisdiction." *Id.* (citations omitted).

Though *Cardoso* evaluated the exhaustion of remedies requirement under 8 U.S.C. § 1252(d) (1999), courts in the Fifth Circuit have since applied *Cardoso*'s exhaustion principles to challenges of USCIS denials of adjustment applications brough under the APA. *See, e.g.*, *Cavena v. Renaud*, 2021 WL 2716432, at *1 (N.D. Tex. June 30, 2021), *Judhani v. Holder*, 2011 WL 1252661, at *5 (N.D. Tex. Mar. 9, 2011); *see also Petrenko-Gunter v. Upchurch*, 2006 WL 2852359, at *1 (5th Cir. Oct. 2, 2006) (per curiam) (unpublished).

        ii.        *Nolasco v. Crockett*

In *Nolasco*, the plaintiff was an immigrant who had been granted Temporary Protected Status ("TPS"), which permitted him to "live and work in the United States until his TPS [was] withdrawn." 978 F.3d at 956. Like *Cardoso*, the controversy arose when the plaintiff's adjustment of status application was denied without initiation of removal proceedings. *Id.*; *see Cardoso*, 216 F.3d at 517. Seeking judicial review, the plaintiff petitioned the district court, which found that it lacked subject-matter jurisdiction because, among other reasons, the plaintiff had not exhausted his administrative remedies under *Cardoso*. *Nolasco v. Crockett*, 2019 WL 2437180 at *6–7 (E.D. La. June 11, 2019). The plaintiff appealed, and the Fifth Circuit originally affirmed the district court's conclusion under *Cardoso*. *See Nolasco v. Crockett*, 958 F.3d 384, 385 (5th Cir. 2020), *withdrawn and superseded by* 978 F.3d 955 (5th Cir.). However, shortly after issuing its opinion, the Fifth Circuit granted the plaintiff's petition for rehearing *en banc*. *See Nolasco*, 978 F.3d 955.

Sitting *en banc*, the Fifth Circuit panel withdrew its original opinion—instead disposing of the case on the grounds that, though the district court had subject-matter jurisdiction, the plaintiff

had failed to state a legally cognizable claim. *See id.* at 956, 958–59. In doing so, the court noted that, since its original opinion, "the Supreme Court decided *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020), which clarified the meaning of the statutory term 'final order of removal.'" *Id.* at 956. Its decision to not base its opinion on *Cardoso*, the court expressed, was made "[w]ithout expressing an opinion as to whether *Nasrallah* may have partially abrogated portions of *Cardoso*." *Id.*

### 2. *Cardoso* Remains Controlling

Puente argues that, by holding that it had subject-matter jurisdiction over the plaintiff's claims in *Nolasco*, the Fifth Circuit necessarily found that the exhaustion principles of *Cardoso* were "not . . . controlling." Doc. 12, Pl.'s Resp., 3. Puente also points out that *Cardoso* contained a citation error, has been criticized by the Third Circuit, and its application would leave Puente in an "administrative purgatory where any legal claims she may have simply escape review." Doc. 12, Pl.'s Resp., 5–8. USCIS replies that *Nolasco* is distinguishable and as a result, *Cardoso* remains controlling authority. Doc. 13, Defs.' Reply, 4–7. The Court agrees with USCIS.

To start, the Court notes that "[e]xhaustion of administrative remedies was not at issue in . . . *Nolasco*." *See Mendoza v. Wolf*, 2020 WL 7123166, at *4 & n.21 (S.D. Tex. Dec. 4, 2020). Under the INA, the government may not remove someone with TPS "during the period in which such status is in effect." 8 U.S.C. § 1254a(a)(1)(A). Thus, while an adjustment application may generally be renewed upon commencement of removal proceedings, USCIS was prohibited from initiating such proceedings against the plaintiff in *Nolasco* because he had been granted TPS. *Mendoza*, 2020 WL 7123166, at *4 & n.21 (citing *Nolasco*, 978 F.3d at 957 & n. 2).

Unlike the *Nolasco* plaintiff, Puente has not been granted TPS and thus, nothing bars USCIS from initiating removal proceedings. *See id.*; *cf. Nolasco*, 978 F.3d at 957 & n.2. While Puente is

correct that USCIS "holds the key to permitting" judicial review, Doc. 12, Pl.'s Resp., 7, the Court is bound by *Cardoso* nonetheless. Indeed, the same was true in *Cardoso* and every other case applying it. *See, e.g.*, *Cardoso*, 216 F.3d at 518; *Petrenko-Gunter*, 2006 WL 2852359, at *1; *Cavena*, 2021 WL 2716432, at *1. Thus, the Court concludes that, because Puente may renew her application if and when removal proceedings are initiated, USCIS's denial of Puente's adjustment application was not a final agency action under the APA; therefore, Puente has not exhausted her administrative remedies. Accordingly, the Court lacks subject-matter jurisdiction over Puente's claim.

B.   *8 U.S.C. § 1252(a)(2)(B)(i) Strips the Court of Subject-Matter Jurisdiction*

Even if Puente had exhausted her administrative remedies, the Court would still lack subject-matter jurisdiction to hear Puente's claim.

Under § 1252(a)(2)(B)(i), federal courts are barred from reviewing "any judgment regarding the granting of relief under section . . . 1182(i) [waivers of inadmissibility due to fraud or misrepresentation], . . . or 1255 [adjustment-of-status applications.]" Interpreting these statues, the Fifth Circuit has held that § 1252(a)(2)(B)(i) precludes judicial review of "certain discretionary immigration decisions," but "nondiscretionary decisions, such as statutory interpretation and other 'pure legal task[s]'" may still be reviewed. *Nolasco*, 978 F.3d at 957. Therefore, the issue presented is whether Puente seeks review of discretionary decisions made unreviewable by § 1252(a)(2)(B).

USCIS argues that Puente's adjustment application was denied based on its determination of a question of fact—specifically, "whether Puente was admitted to the United States in the manner she claimed." Doc. 7, Defs.' Mot., 12. According to USCIS, Puente's challenges "amount to a disagreement with how USCIS weighed the facts of her case," a discretionary determination, "not USCIS's legal conclusions." *Id.* By contrast, Puente insists that she seeks review of only legal

determinations, specifically "whether . . . USCIS acted arbitrarily and capriciously in" (1) "applying an erroneous standard for establishing her admission and inspection" and (2) "failing to consider all evidence provided." Doc. 12, Pl.'s Resp., 7. The Court agrees with USCIS that Puente seeks review of only discretionary assessments of fact.

Puente states, without citation, that "there is ample Fifth Circuit case law that supports review in this case where Ms. Puente's adjustment application was denied on the alleged failure to establish eligibility." Doc. 12, Pl.'s Resp., 9. In reviewing Puente's Response, the Court found only three cases cited that discuss § 1252(a)(2)(B)'s jurisdictional bar. *See id.* at 3–4, 9 (citing *Mireles-Valdez v. Ashcroft*, 349 F.3d 213 (5th Cir. 2003); *Melendez v. McAleenan*, 928 F.3d 425 (5th Cir. 2019); *Nolasco*, 978 F.3d 955). But, having reviewed *Mireles-Valdez*, *Melendez*, and *Nolasco*, the Court disagrees with Puente that they stand for the general proposition that a finding of ineligibility for adjustment necessarily presents a reviewable decision. *See generally* Doc. 12, Pl.'s Resp., 4.

*Mireles-Valdez* concerned a plaintiff's application for cancellation of removal. 349 F.3d at 214. There, it was undisputed that the plaintiff illegally entered the United States and stayed for twenty-five years before voluntarily leaving the country. *Id.* When he was caught illegally attempting to return, he applied for cancellation of removal. *Id.* To be eligible, he was required to have "ten years[] [of] continuous physical presence in the United States." *Id.* Importantly, the immigration judge denied the application "*as a matter of law and not* in the exercise of discretion" because the judge found that the plaintiff's "voluntary departure . . . interrupted his continuous presence[,]" rendering the plaintiff ineligible. *Id.* at 215 (emphasis in original). Under these circumstances, the Fifth Circuit found that § 1252(a)(2)(B)(i)'s jurisdictional bar did not apply. *Id.* at 217.

In *Melendez*, the question presented was whether a plaintiff who was granted TPS was eligible for adjustment of status when it was undisputed that he overstayed his visa before receiving TPS. 928 F.3d at 426. The court there found "that the denial of [the plaintiff's] adjustment application was a nondiscretionary decision based on the finding he was statutorily ineligible, making Section 1252(a)(2)(B)(i)'s jurisdictional bar inapplicable." *Id.* at 426–27.

*Nolasco* concerned the question of whether a plaintiff who was granted TPS was eligible for adjustment of status when it was undisputed that he entered the country illegally. 978 F.3d at 956–57. Citing *Melendez*, the court found that § 1252(a)(2)(B)(i)'s bar was inapplicable, as the "sole issue" presented was whether the plaintiff's TPS served to cure his ineligibility—this time because the plaintiff "had not been 'inspected and admitted or paroled' into the United States." *Id.* at 958–59.

In the present case, Puente's application—like those in *Mireles-Valdez*, *Melendez*, and *Nolasco*—was denied on an eligibility ground. *See* Doc. 1-5, Denial Letter, 3 ("Because you have not proven that you were inspected and admitted or paroled, or that you are exempt from that requirement, you are ineligible to adjust status in the United States."). But critically, each of the applications in *Mireles-Valdez*, *Melendez*, and *Nolasco* was denied upon undisputed facts. *See Mireles-Valdez*, 349 F.3d at 214; *Melendez*, 928 F.3d at 426; *Nolasco*, 978 F.3d at 958. The same cannot be said in Puente's case. USCIS's denial letter, attached to Puente's complaint, states: "In your case, the basic facts are in dispute. The record does not include sufficient evidence that you were inspected, admitted or paroled to the United States." Doc. 1-5, Denial Letter, 3. In other words, Puente's application was not denied on the basis that her entrance to the United States—as she described it—renders her ineligible for adjustment of status. *See id.* USCIS's denial was based on its factual

determination that Puente did not arrive in the United States in the manner she described. *See id.* Reviewing this determination is not the sort of "pure legal task" the Fifth Circuit has found reviewable. *See Nolasco*, 978 F.3d at 957 (quoting *Akhtar v. Gonzales*, 450 F3d 587, 592 (5th Cir. 2006)).

Puente's case is more analogous to *Ayanbadejo v. Chertoff*, 517 F.3d 273 (5th Cir. 2008) (per curiam). In that case, after spending three months in the United States on a tourist visa, the plaintiff married a United States citizen. *Ayanbadejo*, 517 F.3d at 274. After his wedding, the plaintiff filed an adjustment application seeking "to become a lawful permanent resident." *Id.* USCIS investigated the marriage and ultimately denied the application. *Id.* at 275. When the plaintiff sued, the district court dismissed the action because it found that § 1252(a)(2)(B) stripped it of subject-matter jurisdiction. *Id.* at 275–76. The Fifth Circuit affirmed, commenting that, "Although the [plaintiff] argue[s] that USCIS's basis for refusing to adjust [his] status was a legal conclusion that a non-viable marriage precluded the change-in-status he requested, USCIS's predicate determination of whether [he] had a bona fide marriage was a question of fact, not law." *Id.* at 277 n.11. The court explained that "[s]ection 1252(a)(2)(B)(i) explicitly places 'any judgment regarding the granting of relief under . . . section 1255,' which provides the statutory authority for I-485 applications, in [the] category of discretionary decisions that no courts have jurisdiction to review." *Id.* at 277. Further, the Court emphasized that "[t]he law makes clear that . . . the district court lack[ed] jurisdiction over determinations made with respect to an I-485 application for permanent resident status under § 1255." *Id.*

Like USCIS's determination that the *Ayanbadejo* plaintiff did not have a bona fide marriage, USCIS's determination here that Puente was not inspected and admitted or paroled into the United

States is a "judgment regarding the granting of relief under . . . section 1255," which the Court has no jurisdiction to review. *Id.* Puente's attempt to attack USCIS's decision-making process through an APA claim does not change this result. The APA is inapplicable where "statutes preclude judicial review; or agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)–(2); *see Cavena*, 2021 WL 2716432, at *4. And, in any event, "[a] discretionary determination . . . is nothing more than an expression of how the evidence was weighed; the weighing of evidence is inextricably intertwined with the decision itself." *Struniak v. Lynch*, 159 F. Supp. 3d 643, 652 (E.D. Va. 2016). "[T]o say that . . . USCIS improperly weighed evidence is to say that . . . [it] abused its discretion to review the evidence, but an abuse of discretion remains an exercise of discretion all the same, albeit perhaps not a prudent one." *Id.* Therefore, because USCIS's determination was discretionary, the Court is barred from reviewing it by § 1252(a)(2)(B).

C. *Puente Has Not Identified Another Source of Subject-Matter Jurisdiction*

Puente's Complaint cites to, as alternative bases of jurisdiction, 8 U.S.C. §§ 2201–02 (the Declaratory Judgment Act), 28 U.S.C. § 1651 (the All Writs Act), 28 U.S.C. § 1361 (the mandamus statue), and 28 U.S.C. § 1331 (the federal question statue). *See* Doc. 1, Compl., ¶ 27. But none of these statutes supply the Court with jurisdiction to hear Puente's claim.

"First, neither the Declaratory Judgment Act nor the All Writs Act provide an independent basis for subject matter jurisdiction." *Parveen v. McAleenan*, 410 F. Supp. 3d 809, 815 (S.D. Tex. 2019). Second, the mandamus statute does not apply because "mandamus is not available to review the discretionary acts of officials," and as explained above, Puente challenges only USCIS's discretionary determinations. *See Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992). And third, the Court cannot exercise federal question jurisdiction because, as explained above,

§ 1252(a)(B)(i) precludes judicial review. *See Parveen*, 410 F. Supp. 3d at 816. Accordingly, Puente has failed to identify another statute supplying this court with subject-matter jurisdiction to hear her claim.

## IV.

## CONCLUSION

For the reasons above, the Court finds that it lacks subject-matter jurisdiction to hear Puente's claim. Accordingly, USCIS's Motion to Dismiss (Doc. 7) is **GRANTED** and Puente's claim is **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court is directed to administratively close this case.

**SO ORDERED**.

**SIGNED: November 15, 2021.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE